Van Voorhis, J.
Defendant landlords appeal from so much of the judgment as granted an injunction to plaintiff directing landlords to furnish manual operation of the passenger elevators in the apartment house at 161 West 75th Street and 174 West 76th Street, in the borough of Manhattan, city and State of New York, and decreed that they maintain doormen at the entrance halls and re-establish an intercommunicating telephone service in said premises. Defendants likewise appeal from an additional allowance of $1,000 costs to plaintiff. The injunctive relief thus granted must be reversed insofar as it is based upon the Federal Housing and Rent Acts of 1947 and 1949 (U. S. Code, tit. 50, Appendix, § 1881 et seq.), for reasons stated in Brownrigg v. Herk Estates, Inc. (276 App. Div. 566), decided at same time herewith. This action is not brought by the Housing Expediter who, moreover, was informed by the landlords of the proposal, at least, to substitute automatic for manually operated elevators, and apparently made no objection to this substitution.
In the interest of justice, however, the complaint should not be dismissed and a new trial should be granted in view of the circumstance that it appears from the record that other tenants in the building, in whose behalf this action is alleged to have been brought, have been charged a 15% increase in rents, which could only have been done in compliance with the regulations if the landlords signed Form D-92 under circumstances similar to those described in Brownrigg v. Herk Estates, Inc. (supra). It is contended that the conditions thus agreed to by the landlords involved a promise to continue to maintain all of the services in operation on the maximum rent date, March 1, 1943, and that such tenants are entitled to take advantage thereof as third-party beneficiaries. Such a liability would be contractual rather than statutory in origin. Much of what is said in the Broivnrigg case applies here about the need for a new trial, in order to develop the facts underlying such a contention.
As in the case of Brownrigg v. Herk Estates, Inc., it is not entirely clear that the tenants intended to allege in their complaint that the landlord contracted to maintain' all services in *576 effect on March 1, 1943, by accepting an increase in rents and signing the Housing Expediter’s Form D-92 as a condition to the approval of such increase. Nevertheless we have so interpreted it by a liberal construction. This point was neither urged nor passed upon below. The record of the trial does not present the facts on which the conclusion of the dissenting Justices is based, that an express agreement was made through the area rent office of the Housing Expediter to continue to maintain these services. The scope and the coverage of Form D-92 is not definite from the form itself, and was left to inference upon the trial. Without a further showing to be made upon a new trial, we cannot tell what services were contracted for under Form D-92.
A further basis of contractual liability, adduced to sustain injunctive relief at the instance of tenants herein, so far as manual operation of passenger elevators is concerned, was found by the trial court in a covenant in many of the leases of apartments in this building, which is carried forward into statutory tenancies (Stern v. Equitable Trust Co., 238 N. Y. 267). This form of lease is known as the “ Mark Bafalsky ” lease, so named after a former renting agent, and this covenant provides: “ Landlord will supply either manual operated or self-service automatic elevator service (if building contains an elevator) steam heat and hot and cold water in the manner and at the times as is customary for buildings of the same class * * The trial court has held that this type of lease obligates defendant landlords to furnish manually operated elevators. In support of such a holding, plaintiff advanced the theory that the language above quoted requires the maintenance of the same type of elevator service — manual or automatic — which was in operation when the lease was signed. The words used do not necessarily mean precisely this. The covenant is subject to interpretation with the aid of extrinsic evidence.
This lease was evidently prepared as a form for use in many apartment buildings differing from one another in character. It bears evidence of having been designed for buildings without elevators, as well as for those having manually operated or automatic elevators. What the covenant says is that, if the apartment house in question contains an elevator, the landlord “ will supply either manual operated or self-service automatic elevator service * * * in the manner and at the times as is customary for buildings of the same class ”. We think that the type of elevator service in operation when such a lease was signed may be some evidence of what is customary for buildings *577 of the same class as the subject property, but that it is not necessarily conclusive upon the point. The ultimate fact to be determined is what type or types of elevator service is or are now customary for buildings of the same class. The inquiry should be directed to that end. What would be the result if there is no custom with respect to this matter, or if it is customary to use either type of elevator service, need not be decided upon this record, and could not be decided now in any event since this record contains no evidence of what is or is not customary in that regard. Evidence upon this point may be developed upon the new trial.
A few words should be said concerning the admissibility of certain evidence with respect to this covenant in the Rafalsky form of lease. Plaintiff sought to show conversations, in elucidation of this covenant, between various tenants and the former owner or his agent at times when leases containing this covenant were made. These conversations were excluded on the theory that the lease is not ambiguous. The lease is ambiguous, or, at least, is not conclusive regarding elevator service in a particular apartment house without being supplemented by extrinsic evidence. Such conversations should have been received as admissions against interest by a former owner of real property before parting with the title (Chadwick v. Fonner, 69 N. Y. 404; Richardson on Evidence [7th ed.], § 386).
Testimony of Richard L. Rafalsky, president of Mark Rafalsky & Company, agent for the former owner, was admitted which is not entirely clear, giving his opinion of what these leases mean. This testimony should not be received unless there is some further basis for it than the mere operation of the witness’ mind. If admissible at all, it would, of course, have to be upon some other basis than admission against the interest of the principal, made outside the scope of the agency or after its termination.
The requirement of section C19-164.0 of the Administrative Code, that in every building exceeding 150 feet in height at least one elevator shall be kept in immediate readiness for use by the fire department during all hours of the night and day, including holidays and Sundays, and that there shall be in attendance at all times a man competent to operate the elevator, does not determine the result. It requires that there shall be at all times in attendance at the building a man competent to operate the elevator in case of fire, but this section does not require that the elevators shall at all times be operated manually for the tenants when there is no fire. It is enough if there *578 is, as in this building, at all times a man immediately available in the building to operate an elevator in event of fire.
The additional allowance of costs should be denied.
The judgment appealed from should be reversed and a new trial granted, with costs to appellants to abide the event.